IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2001 Session

## STATE OF TENNESSEE v. HORACE DEMON PULLIAM

**Direct Appeal from the Criminal Court for Davidson County**
**No. 98-D-2554     Cheryl Blackburn, Judge**

_____

**No. M2001-00417-CCA-R3-CD - Filed January 23, 2002**

_____

The defendant was indicted by a Davidson County Grand Jury on one count of premeditated first degree murder and two counts of attempted first degree murder. Following a jury trial, the defendant was convicted of the indicted premeditated first degree murder count and two counts of the lesser-included offense of attempted second degree murder. The defendant was sentenced to life imprisonment for premeditated first degree murder and two 11-year terms for the two counts of attempted second degree murder, with all sentences to run consecutively, for a total effective sentence of life plus 22 years. In this appeal, the defendant contends (1) the evidence was insufficient to sustain the convictions; (2) the trial court erroneously refused to charge reckless endangerment as a lesser-included offense of attempted first degree murder; and (3) the trial court erroneously sentenced the defendant to consecutive sentences. After a thorough review of the record, we conclude the trial court erroneously failed to charge reckless endangerment as a lesser-included offense of attempted first degree murder and remand for a new trial on these two counts. We affirm the conviction and life sentence for premeditated first degree murder.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Horace Demon Pulliam.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret T. Gunn and Kimberly F. Cooper, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# FACTS

Serena Stark testified that on July 5, 1998, she, Corey Manning, and Anthony Middlebrooks, the deceased victim, were driving back to Stark's residence when Middlebrooks requested they stop at an apartment on Clifton Avenue. They stopped, and Middlebrooks went inside while Stark and Manning remained in the vehicle. Middlebrooks returned very shortly and stated they had to leave quickly because he "had a bad go-around with some guy that was inside, and that we needed to get out of there." As they drove away, Stark saw an African-American male hurriedly get in an early 1990's maroon Chevrolet Caprice Classic. Within approximately one minute, they stopped at a red traffic light. The Caprice pulled behind them, its door opened, and shots were fired. Stark and Middlebrooks were hit by bullets, and the Caprice fled the scene. They drove towards the hospital but stopped to seek help from two police officers parked at a car wash. Stark further stated no one in their vehicle had a weapon.

Corey Manning corroborated Stark's testimony and additionally stated Middlebrooks, upon his return from the apartment, stated "he ran into a guy that he robbed not too long ago," and he wished he had a gun.

Officer Ryan Garland testified he and Officer Shannon Beck were in their cruisers at a car wash parking lot on July 5th at approximately 10:30 p.m. Garland saw Stark's car speed toward them, and a maroon Chevy Caprice Classic hurriedly turn onto another street. Stark and Manning exited their car, informed the officers of the shooting, and described the vehicle which the shooter drove. Officer Beck unsuccessfully attempted to chase the maroon Caprice while Officer Garland tended to Stark and Middlebrooks. Although Middlebrooks initially had a pulse, he died before arrival of the ambulance.

Alfonzo Gregory testified he was smoking marijuana in the Clifton Avenue apartment on the evening of July 5th. Middlebrooks entered, purchased cocaine, and exited within two minutes. Although Middlebrooks and defendant saw each other, they did not speak. He testified his brother, Jerome, gave the defendant his .44 revolver after Middlebrooks' departure. The defendant then left, and his vehicle "spit gravel [going] out of the driveway . . . ."

Jerome Gregory was smoking marijuana and ingesting Valium in the Clifton Avenue apartment on the evening of July 5th. He stated Middlebrooks entered the apartment, purchased cocaine, and exited. He explained Middlebrooks had previously robbed the defendant, and when Middlebrooks left, the defendant requested the witness' .44 revolver. Gregory complied with the request, and the defendant "jumped in his car" and left.

Antwan Nesby was also smoking marijuana in the Clifton Avenue apartment. Nesby stated that Middlebrooks came into the apartment, and when Middlebrooks left, the defendant requested to see Jerome Gregory's .44 revolver. Jerome Gregory gave the defendant the revolver, and the defendant left.

Detective E.J. Bernard responded to the shooting. Bernard went to the Clifton Avenue apartment and recovered a partial box of .44 ammunition, which was sent to the crime laboratory for analysis. He interviewed the persons in the apartment, and they picked the defendant from a photo lineup. Officers had prior information concerning the defendant, and they searched for him at several locations. At one of the locations, they saw a 1991 maroon Caprice "backed into the back yard beside the house." The owner consented to a search of the residence, but nothing relevant was recovered. Officers then towed the Caprice. The defendant was located and arrested on July 7th. Officers obtained a search warrant for the Caprice, which the defendant said was "his car, but it was in his mother's name so it wouldn't be confiscated." Nothing relevant was discovered in the vehicle search.

Terrie Arnie, a firearms identification expert, examined the bullet recovered from Middlebrooks and opined he was killed with a .44 revolver. Arnie additionally stated that she tested a box of .44 cartridges she received from Det. Bernard. She stated the cartridges were consistent with the bullet recovered from Middlebrooks.

Patricia Drew, the defendant's aunt, testified her residence is located approximately 20 minutes from the crime scene. She stated that on July 5th, the defendant came by and used her phone at 9:45 p.m. or 10:45 p.m. She said he stayed at her house for approximately 15 minutes.

The defendant testified he was "in and out" of the Clifton Avenue apartment several times on July 5th because he was trying to sell a shotgun. He further stated he often sold Middlebrooks cocaine. Although he said Middlebrooks robbed him approximately four months prior, he said he "wasn't even thinking about it" anymore. He testified that when Middlebrooks entered the apartment, he exited and went to his car to play music. The defendant said that after Middlebrooks left, he went back into the apartment and placed marijuana in his hollowed out cigar. Then, he said his beeper activated indicating a customer required a meeting, and he left approximately three minutes after Middlebrooks. The defendant conceded he was driving the 1991 Caprice that evening but denied any involvement in the shooting as well as taking a gun from Jerome Gregory.

As stated, the jury convicted the defendant of the premeditated first degree murder of Middlebrooks and two counts of the lesser-included offense of attempted second degree murder of Stark and Manning.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence was insufficient to sustain his convictions. We disagree.

### A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings

by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,18 (Tenn. Crim. App. 1996).

This court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Although the evidence of defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, for this to occur, the circumstantial evidence must be consistent with guilt of the accused, inconsistent with innocence, and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. While following the above guidelines, this court must remember that the jury decides the weight to be given to circumstantial evidence. "The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)(citation omitted); *see also* State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

## B. Analysis

The defendant's sufficiency claim is predicated on the issue of identity; namely, he contends the state failed to adequately prove he was the shooter. We disagree.

The defendant was convicted of premeditated first degree murder and attempted second degree murder. Tenn. Code Ann. § 39-13-202(a)(1) defines first degree murder as "[a] premeditated and intentional killing of another." Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

The element of premeditation is a question of fact to be determined by the jury. State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d

-4-

651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our supreme court delineated several circumstances that may be indicative of premeditation, including the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of the intent to kill the victim by the defendant, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. *See* Bland, 958 S.W.2d at 660.

Tenn. Code Ann. § 39-13-210(a)(1) defines second degree murder as "[a] knowing killing of another." Furthermore, the Tennessee Code provides in pertinent part as follows:

> A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> . . . .
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3).[1]

There was evidence that Middlebrooks had previously robbed the defendant, giving the defendant a motive for revenge. Middlebrooks, upon exiting the apartment, told Serena Stark and Corey Manning that he saw "a guy that he robbed not too long ago . . . ." Middlebrooks, perceiving a threat from the defendant, stated he wished he had a gun with him, and they needed to leave quickly. Meanwhile, the defendant, upon Middlebrooks' departure, requested to borrow a .44 revolver from Jerome Gregory. Gregory tendered the weapon, and the defendant exited the apartment and hastily left in his car.

Stark testified that while they were leaving, she saw a man, who matched the defendant's general description, hurriedly exit the apartment and get in a 1990's maroon Caprice. They drove approximately one minute and stopped at a red traffic light. The same Caprice she saw at the apartment stopped directly behind her, and its driver fired numerous shots into her vehicle, striking Stark and Middlebrooks. The defendant admitted he drove a 1991 maroon Caprice.

Allowing the state the strongest legitimate view of the evidence and all reasonable inferences therefrom, the jury could rationally conclude beyond a reasonable doubt that the defendant was the

---

[1] The trial court did not charge that portion of the statute providing that a person commits criminal attempt who "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann § 39-12-101(a)(2). Had this portion of the statute been charged, the evidence would also have been sufficient to support attempted second degree murder under this theory of liability.

person who shot into the vehicle. The jury could further conclude the killing was intentional and premeditated. A deadly weapon was used upon an unarmed victim; the weapon was procured to use against the victim; the defendant had a motive to shoot the victim; and the defendant followed the victim until he had an opportunity to shoot him. The defendant was properly convicted of the premeditated first degree murder of Middlebrooks.

The jury could further conclude the defendant attempted to commit the second degree murders of Stark and Manning. Viewing the evidence in a light most favorable to the state, the jury could reasonably infer the defendant saw there were three persons in the car and fired numerous shots into the car. The defendant had followed them and pulled up directly behind them at the stop light. Thus, the jury could reasonably infer the defendant attempted to murder not only Middlebrooks, but also the other two occupants in the car.

As to the attempted second degree murder of Stark, the jury had yet another theory of criminal liability upon which it could rely. Where a defendant premeditatedly and intentionally tries to kill one person and an unintended victim is killed, a defendant is criminally liable for the premeditated first degree murder of the unintended victim. Millen v. State, 988 S.W.2d 164, 168 (Tenn. 1999). We believe this same theory of criminal liability can apply to attempted murder where an unintended victim is shot but not killed. There was ample evidence for a jury to conclude that the defendant was attempting to murder Middlebrooks when Stark was shot. This attempted second degree murder of Stark is clearly justified under the Millen theory of criminal liability.

Accordingly, this issue lacks merit.


## II. LESSER-INCLUDED OFFENSES

The defendant requested an instruction on reckless endangerment as a lesser-included offense of attempted first degree murder, which the trial court denied. The defendant contends this was reversible error, and we agree.

### A. Burns Requirements

Misdemeanor reckless endangerment is committed when a defendant "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). Our supreme court has recently determined that misdemeanor reckless endangerment is a lesser-included offense of attempted second degree murder. State v. Rush, 50 S.W.3d 424, 431 (Tenn. 2001). Accordingly, we conclude it is also a lesser-included offense of attempted first degree murder. However, our analysis does not conclude there. As stated by the Tennessee Supreme Court in State v. Ely, 48 S.W.3d 710, 722 (Tenn. 2001), we must also determine whether the charge is justified by the evidence. *See* State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999). This requires that we determine (1) whether there is evidence that "reasonable minds" could accept to establish the lesser-included offense, and (2) whether the evidence is "legally sufficient" to support a conviction for the lesser-included offense. *Id.* The

evidence must be viewed liberally in a light favoring the existence of the lesser-included offense without making any judgments as to credibility of the evidence. *Id.*

## B. Basis for Charge

The state contends the charge of misdemeanor reckless endangerment was properly rejected because the only factual dispute was that of the perpetrator's identity. In support of its position, the state cites State v. Doney D. Miles, No. W2000-02587-CCA-R3-CD, 2001 WL 1078281 (Tenn. Crim. App. Sept. 14, 2001, at Jackson), *perm. to app. pending*. As in the instant case, the Miles defense was that of mistaken identity; namely, Miles did not deny a crime had occurred, but alleged he was not the perpetrator. *Id.* at *5. Additionally, it was undisputed that the crime of aggravated robbery was committed. *Id.* It was undisputed the perpetrator displayed a weapon and struck the victim in the head with it before taking the money. *Id.* Accordingly, we concluded the trial court properly rejected charges on the lesser-included offenses of simple robbery and theft. *Id.*

Contrary to the state's position, a defendant's claim of mistaken identity of the perpetrator does not necessarily eliminate the need to charge lesser-included offenses. In Miles, we held that "reasonable minds could not accept the evidence as establishing [the lesser-included offenses]." *Id.* Such is not the situation in the instant case. The evidence established that Middlebrooks had previously robbed the defendant, and shortly after the defendant saw Middlebrooks, he obtained a weapon and fired several shots into the vehicle in which Middlebrooks was traveling. Viewing the evidence in a light most favorable to the state, the jury reasonably concluded the defendant was guilty of the attempted second degree murders of Stark and Manning as we have previously discussed. However, viewing the evidence in a light favoring the existence of the lesser-included offense, as required by Burns, reasonable minds could conclude the defendant's shooting at Middlebrooks placed unintended victims Stark and Manning in imminent danger of death or bodily injury. This is reckless endangerment. *See* Tenn. Code Ann. § 39-13-103(a). However, the jury was not given the chance to consider this offense. Furthermore, the evidence is legally sufficient to support such convictions.[2]

We further conclude this error was not harmless under State v. Williams, 977 S.W.2d 101 (Tenn. 1998). According to Williams, any error associated with the trial court's failure to instruct on a lesser-included offense is harmless when the jury finds the defendant guilty of the greatest charged offense and declines to convict the defendant on the immediately lesser-included offense. *Id.* at 106. In the instant case, the jury convicted the defendant of the only lesser-included offense charged, attempted second degree murder, and no other lesser-included offenses were charged. Williams does not apply.

---

[2]We recognize that if the defendant were convicted of reckless endangerment on both counts, the convictions would likely be merged into one conviction. *See* State v. Ramsey, 903 S.W.2d 709, 713 (Tenn. Crim. App. 1995) (finding only one reckless endangerment offense where the defendant's reckless conduct endangered passengers in two vehicles); State v. Christopher Bengtson, No. E1999-01190-CCA-R3-CD, 2000 WL 1456926, at *4 (Tenn. Crim. App. Oct. 2, 2000, at Knoxville) (merging three felony reckless endangerment convictions into one conviction where the defendant pointed a loaded shotgun at three victims).

Accordingly, we reverse the convictions for attempted second degree murder and remand for a new trial on the two counts of attempted second degree murder. The defendant may not be retried for attempted first degree murder since he was acquitted on that offense. *See* Rush, 50 S.W.3d at 432.

### III. SENTENCING

The defendant contends his consecutive sentences, comprising an effective sentence of life imprisonment plus 22 years, are improper. Although our reversal of the defendant's two convictions for attempted second degree murder renders this issue moot, we shall address this issue in the event of further appellate review.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). Furthermore, in the event the trial court finds defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed, and (2) serve to protect the public from further criminal conduct by the offender. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

At the sentencing hearing the state presented testimony of a corrections officer of the Criminal Justice Center where the defendant was housed pending his trial. She testified that a week before the defendant's trial, the defendant, without provocation, brutally attacked a fellow inmate and "banged his head up against the wall." She stated the inmate's "head was flat" when they got to him. The inmate has since suffered seizures and had two strokes. There was no further testimony concerning the incident.

The defendant contends the testimony of his alleged assault upon a fellow inmate shortly before trial was "irrelevant" to the consecutive sentencing issue. He contends the trial court erred in relying upon it since the defendant had not yet pled guilty or been found guilty relating to this incident. We reject this argument. Consecutive sentencing is authorized if the court finds "by a preponderance of the evidence" that the defendant is a dangerous offender. Tenn. Code Ann. § 40-

35-115(b)(4) (emphasis added). A trial court is not prohibited from considering prior criminal behavior for sentencing purposes even though there has been no conviction. *See* State v. Carico, 968 S.W.2d 280, 287-88 (Tenn. 1998) (holding prior sexual misconduct, for which there has been no prior conviction, was properly considered as an enhancement factor under Tenn. Code Ann. § 40-35-114(1)); *see also* State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000) (holding the court may apply an enhancement factor based upon facts underlying an incident for which the defendant was acquitted; provided, it is shown by a preponderance of the evidence). We see no impediment to the trial court's relying upon this brutal assault in considering whether the defendant is a dangerous offender for purposes of consecutive sentencing. *See* State v. Palmer, 10 S.W.3d 638, 648-49 (Tenn. Crim. App. 1999) (noting the trial court is not limited to the instant offenses, but may consider the defendant's prior criminal record, in determining whether the defendant qualifies for consecutive sentencing based upon the extensive record of criminal activity and dangerous offender categories).

The trial court concluded the defendant was a dangerous offender whose behavior indicates little or no regard for human life, and he had no hesitation about committing a crime in which the risk to human life was high. The trial court specifically noted (1) he shot at the vehicle at an intersection near other individuals; (2) he had prior drug and weapons convictions; and (3) he brutally beat an inmate to the point he "flatten[ed]" his head. Furthermore, the trial court expressly found the aggregate term of the sentences reasonably related to the seriousness of the offenses, and consecutive sentencing was necessary to protect the public. The trial court followed the statutory requirements, gave proper consideration to the principles of sentencing, and its findings are clearly supported by the record. Accordingly, we are not at liberty to disturb the trial court's ruling. *See* Hooper, 29 S.W.3d at 5.

This issue is without merit.


## CONCLUSION

We affirm the conviction and life sentence for premeditated first degree murder and reverse the convictions for attempted second degree murder. This case is remanded for a new trial on the two charges of attempted second degree murder.

_____
JOE G. RILEY, JUDGE